UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Ewan Leask, | Case No. 22-cv-2481 (NEB/DTS) |
| Plaintiff, | **PLAINTIFF'S FIRST SET OF DISCOVERY REQUESTS TO DEFENDANTS** |
| v. | |
| City of Minneapolis, et al., | |
| Defendants. | |

To: Defendants and their counsel of record

Plaintiff Ewan Leask, by and through his undersigned counsel, hereby requests that Defendants respond to these discovery requests within the time required by the Rules of Civil Procedure.

## DEFINITIONS

1. The terms "Defendants" and "you" mean Defendants City of Minneapolis, Jeffrey Pennaz, and/or persons or entities acting or purporting to act on their behalf, including, without limitation, their counsel.

2. The term "person" means and includes any natural person, individual, proprietorship, association, limited liability company, joint venture, firm, partnership, corporation, estate, trust, receiver, syndicate, municipal corporation, party, and/or any other form of business or legal entity, governmental body, group of natural persons, or entity, including any employee or agent thereof.

3. The term "identify," when used in reference to a person, means to state the person's full name, employer, current home and/or business address, email address, telephone number, and badge number (if applicable).

4. The term "identify," when used in reference to a document, means to state its date, author, addressee, type, and present custodian. In lieu of such identification, a legible copy may be produced.

5. The term "document" means any medium upon which information or intelligence can be recorded or retrieved, including, without limitation, any

Ex. P

written or graphic matter or other means of preserving thought or expression, and all tangible things from which information can be processed or transcribed, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including, but not limited to, correspondence, memoranda, notes, messages, letters, telegrams, teletypes, telefaxes, e-mails, bulletins, meetings or other communications, inter-office of intra-office telephone calls, diaries, chronological data, minutes, books, reports, studies, summaries, pamphlets, printed matter, charts, ledgers, invoices, worksheets, receipts, returns, computer printouts, prospectuses, financial statements, schedules, affidavits, declarations, contracts, canceled checks, statements, transcripts, statistics, surveys, magazine or newspaper articles, releases, agreements, graphic or oral records of representations of any kind, including, without limitation, microfilm, photographs, charts, microfiche, videotape, recordings, voice messages, motion pictures, mini-discs, CD-ROM discs, DVDs, tapes, cassettes, or mechanical or electronic recordings or representations of any kind.  A draft or non-identical copy is a separate "document" within the meaning of this term.

6. The term "communication(s)" means every manner or means of disclosure, transfer, or exchange of information, whether in person, by telephone, mail, electronic mail, personal delivery, or otherwise.

7. The phrases "refer(s) to" and "relate(s) to" mean: pertains to, pertaining to, contains, concerns, describes, embodies, mentions, constitutes, supports, corroborates, demonstrates, provides, evidences, shows, refutes, disputes, rebuts, controverts, or contradicts.  A document "relates to" or is "relating to" a given subject matter if it mentions, constitutes, contains, comprises, consists of, embodies, identifies, states, refers to, deals with, sets forth, proposes, shows, evidences, discloses, describes, discusses, explains, summarizes, concerns, other otherwise addresses in any way the subject matter of these Interrogatories.

8. The term "law enforcement officer" is defined as one "whose duty it is to preserve the peace." *Milner v. Dept. of Navy*, 562 U.S. 562, 582 (2011).

9. The term "Lawsuit" means the case styled *Ewan Leask v. City of Minneapolis, et al.*, Case No. 22-cv-2481 (NEB/DTS), currently pending in the United States District Court for the District of Minnesota.

10. The term "Complaint" means the operative Complaint Plaintiff has filed in the Lawsuit.

11. The term "subsequent investigation" means any examination or search in order to discover facts or gain information related to, and subsequent to, law enforcement's use of force against Plaintiff on May 27, 2020.

12. The term "incident sued upon" means the use of force against Plaintiff at or around 7:17 p.m. on May 27, 2020 at or near Lake Street and Minnehaha Ave. in Minneapolis, Minnesota.

13. The term "corrective action" means formal or informal action similar or identical to the following: verbal or written counseling, coaching, warning(s), discipline, or termination.

## INSTRUCTIONS

1. The interrogatories below require signed answers, and all discovery requests below are continuing in nature, and must be supplemented in accordance with the requirements of the Rules of Civil Procedure.

2. To the extent any information or documents responsive to these discovery requests have been or will be withheld from discovery, or if you have objected to or will object to any outstanding discovery request on the basis of the attorney-client privilege, work product doctrine, or any other privilege, identify each such document or item of information withheld by date, author, addressee(s), recipient(s), document type, and general subject matter, and describe in detail the basis(es) for the withholding.

3. Rule of Civil Procedure 34 requires a party to produce requested documents if they are within its "possession, custody or control." The question, therefore, is not only whether the documents are within the physical possession of the party, but also whether the party has a legal right to the documents or practical ability to obtain the information. *See Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 636 (D. Minn. 2000).

4. Documents produced in response to the Requests for Production below shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond with the categories in the Requests.

5. The Requests for Production below are directed to and cover all documents in either defendant's possession, custody, or control, or in the possession, custody, or control of either defendant's representatives, including but not limited to either defendant's employees, agents, or attorneys, and any other person acting for either defendant, on either defendant's behalf, or under either defendant's authority or control.

6. When producing the documents requested below, please keep all documents segregated by the file in which they are contained, and indicate the name of the file in which they are contained and the name of the documents being produced.

7. Documents responsive to the requests below should be produced in such a manner that the source of the documents is easily ascertainable by Plaintiff.

8. When producing the documents requested below, please produce all other documents that are clipped, stapled, or otherwise attached to any requested document.

9. In the event that files or documents requested herein have been removed, either for the purpose of the Lawsuit or for some other purpose, please identify the person who removed the files or documents, the title of the file and each sub file, if any, maintained within the file, and the present location of the files or documents.

10. If you withhold any document(s) that you are otherwise required by the Requests for Production below to produce, identify with specificity each document by stating its date, author(s), recipient(s), and the reason for withholding said document(s).

11. If you choose to withhold any documents from production or inspection on the grounds of privilege or other immunity from discovery, please provide the following information: the type of document, general subject matter of the document, its date, author(s), signatory(ies), addressee(s) or recipient(s), relationship of the author(s) and addressee(s), present location, present and all previous custodian(s), number of pages, the nature of the privilege claimed (including work-product), and sufficient additional information to explain the claim of privilege and to enable adjudication of the propriety of such a claim.

12. If any document requested below has been lost or destroyed, or is otherwise no longer in your possession, custody, or control, please submit in lieu of each document a written statement:

    (a) describing in detail the nature of the document and its contents;
    (b) identifying the person who prepared or authorized the document and, if applicable, the person to whom the document was sent;
    (c) specifying the date on which the document was prepared or transmitted or both;
    (d) specifying, if possible, the date on which the document was lost or destroyed and, if destroyed, the conditions of or reasons for such destruction, and the person(s) requesting and performing the destruction; and
    (e) if the document was not destroyed, specifying what was done with the document, and the identity and address of its current custodian or any person with knowledge of its location.

13. These discovery requests are continuing in nature so as to require production of any and all documents and things which may be in your possession, custody, or control between the date of service hereof and the date on which the Lawsuit is resolved, either by trial or otherwise.

## INTERROGATORIES

1. Identify every individual you know or believe has personal knowledge of any fact related to the Lawsuit, the incident sued upon, or the allegations in the Complaint or your Answer, and describe in detail what each such person has personal knowledge of related to the Lawsuit, the incident sued upon, or the allegations in the Complaint or your Answer.

2. If it is your position that any person or entity other than Defendants are, or may be, liable in whole or in part for the claims asserted against in the Lawsuit, identify each such person or entity, state all facts or evidence on which you base your position, and state whether you have notified each said person or entity of your position.

3. With regard to the 40mm round that struck Plaintiff on May 27, 2020, identify all facts or evidence that has any tendency to show that it is more likely or less likely that Jeffrey Pennaz intentionally fired that 40mm round at Plaintiff's head.

4. Describe the messaging and chat functions available through Minneapolis Police Department officers' laptop computers or phones as of May 27, 2020; where the messaging was archived; how it is retrievable; and whether Defendants have searched through such documents for materials responsive to Plaintiff's discovery requests.

5. Describe in detail any documents relevant to the incident sued upon that have been lost or destroyed, whether inadvertently or intentionally, or are no longer available, including documents purged according to a purge schedule or any video or audio recordings that were erased or recorded over.

6. If any non-privileged Subsequent Investigation was conducted, or is in the process of being conducted, related to the allegations in the Complaint or your Answer, describe all actions taken with respect to any Subsequent Investigation, identifying each person who took each action, why they took that action, and the date they took that action.

7. If you are aware of any statement or remark made by, or on behalf of, any person concerning any issue in this Lawsuit, including statements by Jeffrey Pennaz or Plaintiff, identify each person who made the statement, each person who heard

the statement, whether the statement was written or oral, any documents related to the statement, and the date, time, place, and substance of the statement.

8. State whether any of your current or former officials, employees, or agents have received any formal or informal corrective action (e.g., verbal counseling or coaching, a verbal or written warning, disciplinary action, or termination) related to the facts alleged in Plaintiff's Complaint; and if not, why not, and whether such corrective action has been intentionally delayed so that coaching or discipline will not occur while the Lawsuit is pending.

9. Identify all facts or evidence, including documents, on which you base your defenses.

10. If your response to any request for admission served with these Interrogatories is not an unqualified admission, identify the following for each response that is not an unqualified admission: the number of the request for admission; all facts or evidence on which you base your response; all persons who have knowledge of those facts or that evidence; all documents that support your response; and the person who (or entity that) has each document you identify in response to this Interrogatory.

11. Identify the on-scene incident commander with regard to the incident sued upon.

12. Identify all acts of force that were used on Plaintiff at approximately 7:17 p.m. on May 27, 2020 by one or more Minneapolis Police Department officers, specifying which officer used what kind of force, why, when, and how many times.

13. State whether it is your contention that Plaintiff was *not* struck in the head by a 40mm round fired by Jeffrey Pennaz at approximately 7:17 p.m. on May 27, 2020; and if so, state in detail and not in a summary fashion the factual basis for that contention.

14. Identify by Bates number and officer name any and all body worn camera footage produced by the City of Minneapolis in which you believe Plaintiff is visible in the footage, and identify the time stamp(s) at which you believe Plaintiff is visible.

15. Identify by Bates number and officer name any and all body worn camera footage produced by the City of Minneapolis in which you believe Plaintiff can be heard audibly, and identify the time stamp(s) at which you believe Plaintiff can be heard.

16. Identify all instances in which a Minneapolis Police Department ("MPD") officer has fired a 40mm round in violation of MPD policy since May 25, 2020.

17. Identify the total number of civilian complaints regarding 40mm rounds (also referred to as rubber bullets, baton rounds, etc.) fired by MPD police officers since May 25, 2020 and the outcomes of each of these complaints (e.g., the total number that have been dismissed, resulted in coaching, resulted in discipline, are ongoing, etc.).

18. Identify by Bates number and officer name any and all body worn camera footage produced by the City of Minneapolis that shows or provides circumstantial evidence of Jeffrey Pennaz firing the 40mm round that struck Plaintiff on May 27, 2020, and the time stamp(s) at which that is seen or heard.

## REQUESTS FOR PRODUCTION

1. All documents, from May 25, 2020 to the present, related to whether Defendant City of Minneapolis took any remedial action to curb or punish the serial constitutional violations by its police officers, including but not limited to documents related to investigation into, or corrective action imposed on current or former Minneapolis police officers as a result of, a code of silence, excessive force (especially through improper deployment of 40mm rounds), underreporting of excessive force, or refusal to participate in an investigation of excessive force.

2. All documents, including but not limited to video footage, that relate in any way to the Lawsuit, the incident sued upon, or the allegations contained in the Complaint or your Answer.

3. All documents you reviewed or relied on in preparing your initial disclosures, Answer, or answers or responses to Plaintiff's discovery requests.

4. All documents that constitute, mention, refer to, or relate to correspondence or communication between you and any person(s) you anticipate calling or intend to call as a fact or expert witness at a deposition, hearing, or trial in the Lawsuit, or between you and any person(s) regarding the Lawsuit, the incident sued upon, or the allegations contained in the Complaint or your Answer.

5. Copies of all statements (written, recorded, or otherwise), declarations, affidavits, and/or reports provided by you to anyone, or to you from anyone, relating to the Lawsuit, the incident sued upon, or the allegations contained in the Complaint or your Answer.

6. All documents obtained through authorizations, releases, or subpoenas related to the Lawsuit, the incident sued upon, or the allegations contained in the Complaint or your Answer.

7. All documents related to your defenses, or which you may use for purposes of impeachment during a deposition, hearing, or trial.

8. With regard to the 40mm round Jeffrey Pennaz fired that struck Plaintiff on May 27, 2020, all documents that have any tendency to show that it is more likely or less likely that Jeffrey Pennaz intentionally fired that 40mm round at Plaintiff's head.

9. All video footage, photographs, or similar documents provided by third parties to the City of Minneapolis or the Minneapolis Police Department, for any purpose, showing law enforcement officers using force at or near the Third Precinct in Minneapolis at approximately 7:17 p.m. on May 27, 2020.

10. All documents related to any Minneapolis Police Department or SWAT Team debrief regarding one or more George Floyd protests.

11. All documents related to any Subsequent Investigation of the incident sued upon.

12. All documents reflecting or referring to the messaging or chat functions available as of May 27, 2020 through Minneapolis Police Department officers' laptop computers or phones related to Plaintiff, the allegations in the Complaint, or law enforcement officers using force on protesters at or near Lake Street and Minnehaha Avenue in Minneapolis at approximately 7:17 p.m. on May 27, 2020.

## REQUESTS FOR ADMISSION

1. Minneapolis police officers trained in the use of the 40mm launcher and 40mm round were aware as of May 27, 2020 that the delivery of a 40mm round to certain parts of the human body could cause grievous injury that could lead to a permanent physical or mental incapacity or possible death.

2. Minneapolis police officers trained in the use of the 40mm launcher and 40mm round were aware as of May 27, 2020 that areas of the human body susceptible to possible severe injury were the head, neck, throat, and chest (in vicinity of the heart).

Ex. P

3. As of May 27, 2020, unless deadly force were justified, Minneapolis police officers were not permitted to fire a 40mm round at someone's head, neck, throat, or chest (in vicinity of the heart).

4. The only projectiles or munitions fired by Minneapolis Police Department officers at or around Minnehaha Avenue and Lake Street in Minneapolis at approximately 7:17 p.m. on May 27, 2020 were 40mm rounds.

5. On May 27, 2020, a Minneapolis Police Department officer fired a 40mm round that struck Ana Maria Gelhaye in her right eye, causing a permanent injury; and no discipline has been imposed on any officer as a result of this incident, even though Ana Maria Gelhaye was not engaged in any assault or damage to property at or around the time she was struck with a 40mm round.

6. On May 27, 2020, a Minneapolis Police Department officer fired a 40mm round that struck Jamie Bunkholt in the head; and no discipline has been imposed on any officer as a result of this incident, even though Jamie Bunkholt was not engaged in any assault or damage to property at or around the time she was struck with a 40mm round.

7. On May 27, 2020, a Minneapolis Police Department officer fired a 40mm round that struck David Laliberte in the head, causing a permanent injury; and no discipline has been imposed on any officer as a result of this incident, even though David Laliberte was not engaged in any assault or damage to property at or around the time he was struck with a 40mm round.

8. At approximately 7:17 p.m. on May 27, 2020, Jeffrey Pennaz shot Ewan Leask in the head with a 40mm round; but no discipline has been imposed on Jeffrey Pennaz as a result of this incident, even though Ewan Leask was not engaged in any assault or damage to property at or around the time he was struck with a 40mm round.

9. On May 28, 2020, Minneapolis Police Department Officer Benjamin Bauer shot Ethan Marks in the eye with a 40mm round, blinding Marks in that eye; and no discipline has been imposed on Officer Bauer as a result of this incident, even though the use of deadly force against Marks was not justified at or around the time he was struck with a 40mm round.

10. On May 28, 2020, a Minneapolis Police Department officer fired a 40mm round that struck Norman Truman in the head, causing a fractured skull, a traumatic brain injury, and an internal brain hemorrhage; and no discipline has been imposed on any officer as a result of this incident, even though Norman Truman was not engaged in conduct justifying deadly force at or around the time he was struck with a 40mm round.

Ex. P

11. On May 29, 2020, Minneapolis Police Department Officer Justin Stetson shot Graciela Cisneros in the face with a 40mm round; and no discipline has been imposed on Officer Stetson as a result of this incident, even though Graciela Cisneros was not engaged in any assault or damage to property at or around the time she was struck with a 40mm round.

12. On or about May 29, 2020, a Minneapolis Police Department officer fired a 40mm round that struck journalist Linda Tirado in the eye, blinding Tirado in that eye; and no discipline has been imposed on any officer as a result of this incident, even though Linda Tirado was not engaged in any assault or damage to property at or around the time she was struck with a 40mm round.

13. At approximately 12:48 a.m. on May 30, 2020, Minneapolis Police Department Officer Oscar Macias shot Samantha Wright in the eye with a 40mm round, causing a permanent injury; and no discipline has been imposed on Officer Macias as a result of this incident, even though Samantha Wright was not engaged in any assault or damage to property at or around the time she was struck with a 40mm round.

14. On May 30, 2020, a Minneapolis Police Department officer fired a 40mm round that struck Autumn Larson in the face, causing serious injuries; and no discipline has been imposed on any officer as a result of this incident, even though Autumn Larson was not engaged in any assault or damage to property at or around the time she was struck with a 40mm round.

15. On May 30, 2020, a Minneapolis Police Department officer fired a 40mm round that struck Raven Bartz in the head; and no discipline has been imposed on any officer as a result of this incident, even though Raven Bartz was not engaged in any assault or damage to property at or around the time she was struck with a 40mm round.

16. The manner in which Minneapolis Police Department officers arrested Virgil Jackson on May 30, 2020 violated the Fourth Amendment, as he was Tased and beaten with no justification; and no discipline has been imposed on any officer as a result of this incident.

17. Hennepin County Judge William Koch concluded in a written order on February 22, 2021 that the manner in which Minneapolis Police Department Officer Justin Stetson and Minneapolis Police Department Sergeant Andrew Bittell arrested Jaleel Stallings on May 30, 2020 violated the Fourth Amendment; and no discipline has been imposed on Officer Stetson or Sgt. Bittell as a result of this incident.

Ex. P

18. On May 31, 2020, Minneapolis Police Department Officer Benjamin Bauer shot Soren Stevenson in the eye with a 40mm round, blinding Stevenson in that eye; and no discipline has been imposed on Officer Bauer as a result of this incident, even though Stevenson was not engaged in any assault or damage to property at or around the time he was struck with a 40mm round.

19. No discipline has been imposed on any Minneapolis Police Department officer for excessive use of force related to one or more George Floyd protests, protesters, or related gatherings between May 25, 2020 and June 1, 2020.

Dated: July 25, 2023

_____
Tim Phillips (#390907)
Law Office of Tim Phillips
331 Second Avenue South, Suite 400
TriTech Center
Minneapolis, Minnesota 55401
Phone: (612) 470-7179
Email: tim@timphillipslaw.com

**ATTORNEY FOR PLAINTIFF**